UNITED STATES of America, Plaintiff,

National Association for the Advancement of Colored People, Inc., Elijah Feaster, Maria Fuller, Beverly Johnson, Darwin Jones, Doris Lewis, David Malone, Robert Middlebrooks, Harrison Mullen, William Stenson, William Westbrook and Nathaniel Wright, Plaintiff-Intervenors,

Sherman Abdallah, Richard Cruz, Marilyn Mack, Joanne Rizzo, Christine Salamone, Deidre Wallace and Gwendolyn Williams, Plaintiff-Intervenors,

William Blake, Joseph Coniglio, Cindy Diem, Charles Flynn, James Howe, Don Just, James P. Kennedy, Michael J. Krzeminski, Timothy McDonald, Maureen Oakley, Patrick S. O'Mara, Paul Skinner, Kevin Veith, Thomas Vivian, Ronald Zaprzal and Taras Znaczko, Plaintiff-Intervenors,

Afro-American Police Association, Inc., Danny Williams, John Dublin, John Clarence Eberhart, Timothy Irving Baldon, Mark Anthony Rice and Vernon Keith Beaty, Plaintiff-Intervenors,

v.

CITY OF BUFFALO, a Municipal Corporation, and County of Erie, Defendants.

UNITED STATES of America, Plaintiff,

v.

CITY OF BUFFALO, a Municipal Corporation, Defendant.

Nos. CIV–73–414C, CIV–74–195C.

United States District Court, W.D. New York.

June 5, 1985.

William Bradford Reynolds, U.S. Dept. of Justice, Civ. Rights Div., Washington, D.C. (David L. Rose, and Richard S. Ugelow, Washington, D.C., of counsel), for plaintiff U.S.

Magavern & Magavern, Buffalo, N.Y. (James L. Magavern, Buffalo, N.Y., of counsel), for plaintiff-intervenors Nat. Ass'n for the Advancement of Colored People, Inc., et al.

Cravath, Swaine & Moore, New York City (Paul C. Saunders, New York City, of counsel), for plaintiff-intervenors Afro-American Police Ass'n, et al.

Leonard F. Walentynowicz, Buffalo, N.Y., for plaintiff-intervenors William Blake, et al.

Sara O. Naples, Corp. Counsel of the City of Buffalo, Buffalo, N.Y. (Michael B. Risman, Buffalo, N.Y., of counsel), for defendant City of Buffalo.

Kenneth Kimmerling, New York City, for amicus curiae Puerto Rican Legal Defense & Educ. Fund, Inc.

CURTIN, Chief Judge.

The Supreme Court's decision in *Firefighters Local Union No. 1784 v. Stotts,* — U.S. —, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), has prompted the United States to file a motion for a prospective modification of a remedial hiring decree filed by the court on November 23, 1979. That decree was based upon this court's finding (after a lengthy trial) that the City of Buffalo, through its police and fire departments, unlawfully discriminated against blacks, Spanish-surnamed Americans [SSA] and women. *See, United States v. City of Buffalo,* 457 F.Supp. 612 (1978). The provisions of the decree at issue here are those which require the City to "seek to achieve an interim goal of making 50% of all entry level and/or police officer [and firefighter] appointments from among qualified black and SSA applicants." Decree at ¶ 3. The decree provides that the hiring goals are to be observed until the minority composition of the police and fire departments equals the percentage of minorities in Buffalo's labor force, or until the City's selection procedures are found by the court, after a hearing, to be valid. Decree at ¶ 7. Thus, the decree expressly provides that the hiring goals are temporary. The Department of Justice, which prosecuted this case against the City and which was the principal draftsman of the November 1979 hiring decree, now contends that *Stotts* requires an end to preferential hiring and that the 1979 decree be modified accordingly. The court rejects this reading of *Stotts* and denies the government's motion.

An extended discussion of the impact of *Stotts* is not necessary. The United States Court of Appeals for the Second Circuit has determined that *Stotts* does not bar race-conscious relief of the sort in effect in the present cases. *EEOC v. Local 638 ... Local 28 of Sheet Metal Workers,* 753 F.2d 1172 (2d Cir.1985).[1] The Court of Appeals observed that *Stotts* was concerned mainly with a district court's interference with a bona fide seniority plan protected by section 703(h) of Title VII, 42 U.S.C. § 200e-2(h). *Id.* at 1186.

In these cases, the government conceded at oral argument that the Second Circuit's decision in *Local 638* constrains this court to deny the instant motion. I agree that the position taken by the Second Circuit is contrary to that urged by the government and requires that the motion be denied. I would only add that the differences between *Stotts* and the cases pending here are so great that there should be no serious question concerning the impact of *Stotts.* The district court in *Stotts* authorized relief which permitted minority firefighters with less seniority to *displace* majority firefighters who had more seniority and were currently working. This was in clear violation of the rule announced in *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), that courts cannot award competitive seniority to persons who are not actual victims of past discrimination. No one currently holding a position in Buffalo's police and fire departments is in jeopardy of losing his or her position as a result of the hiring order in effect in these cases. Thus, our cases do not present a *Stotts* problem.

Finally, the court wishes to reemphasize some facts which are common to many cases of this sort. The hiring order which is in effect here is the result of a finding

---

1. Other courts have also held that race-conscious remedial action is permissible under Title VII. *See, e.g., Vanguards of Cleveland v. City of Cleveland,* 753 F.2d 479 (6th Cir.1985); *Krom-nick v. School District of Pennsylvania,* 739 F.2d 894 (3d Cir.1984); *Deveraux v. Geary,* 596 F.Supp. 1481 (D.Mass.1984).

that the City's selection procedures for the position of firefighter and police officer discriminated against identifiable groups protected by the United States Constitution and federal statutes. At a lengthy trial, the City was unable to prove that the discriminatory impact of its selection procedures was justified by the relationship between its selection procedures and the requirements of police work and firefighting.

The hiring decree expressly provides that the race-conscious hiring goals must end when the City proves that its current selection procedures are valid. The City has undertaken to prove the validity of its procedures for selecting firefighters, and the court shall decide that matter shortly. The City has not as yet requested that the court hold an evidentiary hearing concerning the validity of the police officer selection procedures. Meanwhile, the hiring order now challenged by the Department of Justice only permits the appointment of candidates who have *passed* the City's qualifying examinations. The hiring decree affects the City's selection procedures only to the extent that candidates must sometimes be selected out of rank order to satisfy the minority hiring goals.[2]

Since the selection procedures used by the City have not yet been shown to be accurate predictors of job performance, it is, at this juncture, somewhat presumptuous to say that an injustice is done every time a candidate is selected out of rank order. This court is quite ready to end its involvement in these cases when the City proves that its selection procedures are valid. Indeed, the law forbids the continuation of hiring goals beyond the time when valid selection procedures are in effect, except in special circumstances. *United States v. City of Buffalo*, 633 F.2d 643, 648 (2d Cir.1980).

The motion to modify the remedial hiring order by striking the minority hiring goals is denied.

So ordered.

[2] Interestingly, the Department of Justice still vigorously opposes the City's continued insistence upon selecting police officer and firefighter candidates in rank order based upon performance on qualifying examinations.