779 F.2d 881
 39 Fair Empl.Prac.Cas. 1168,
38 Empl. Prac. Dec. P 35,784, 54 USLW 2367
 UNITED STATES of America, Plaintiff-Appellant,
v.
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
INC., Elijah Feaster, Maria Fuller, Beverly Johnson, Darwin
Jones, Doris Lewis, David Malone, Robert Middlebrooks,
Harrison Mullen, William Stenson, William Westbrook and
Nathaniel Wright, Sherman Abdallah, Richard Cruz, Marilyn
Mack, Joanne Rizzo, Christine Salamone, Deidre Wallace and
Gwendolyn Williams, William Blake, Joseph Coniglio, Cindy
Diem, Charles Flynn, James Howe, Don Just, James P. Kennedy,
Michael J. Krzeminski, Timothy McDonald, Maureen Oakley,
Patrick S. O'Mara, Paul Skinner, Kevin Veith, Thomas Vivian,
Ronald Zaprzal and Taras Znaczko, Afro-American Police
Association, Inc., Danny Williams, John Dublin, John
Clarence Eberhart, Timothy Irving Baldon, Mark Anthony Rice
and Vernon Keith Beaty, Plaintiffs-Intervenors-Appellees,
v.
CITY OF BUFFALO, a Municipal Corporation, and County of
Erie, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
CITY OF BUFFALO, A Municipal Corporation, Defendant-Appellee.
 No. 85-6212.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 18, 1985.
Decided Dec. 19, 1985.
 
 Dennis J. Dimsey, Atty., Dept. of Justice, Washington, D.C. (Wm. Bradford Reynolds, Asst. Atty. Gen., Charles J. Cooper, Deputy Asst. Atty. Gen., Walter W. Barnett, Atty., Dept. of Justice, Washington, D.C., Salvatore R. Martoche, U.S. Atty. for the Western Dist. of N.Y., Buffalo, N.Y., of counsel), for plaintiff-appellant.
 Michael B. Risman, Asst. Corp. Counsel, City of Buffalo (Sara O. Naples, Corp. Counsel for the City of Buffalo, of counsel), for defendant-appellee City of Buffalo.
 L.F. Walentynowicz, Buffalo, N.Y., for plaintiffs-intervenors William Blake, et al.
 Paul C. Saunders, New York City (Douglas R. Cox, Betsy A. Breese, Cravath, Swaine & Moore, New York City, William L. Robinson, Richard T. Seymour, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., of counsel), for plaintiff-intervenors Afro-American Police Assn., Inc., et al.
 Before FEINBERG, Chief Judge, and MANSFIELD and OAKES, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 The United States Government appeals from an order of the Western District of New York entered by Chief Judge John T. Curtin, 609 F.Supp. 1252 (1985), denying its motion to modify the court's November 23, 1979, decree establishing interim goals for the hiring of minority and female policemen and firemen by the City of Buffalo. The decree was entered after a trial in which the court found that the City had engaged in an unlawful pattern and practice of discrimination against black, Spanish-surnamed American and female applicants in violation of Title VII of the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. Sec. 2000e, et seq. See United States v. City of Buffalo, 457 F.Supp. 612 (W.D.N.Y.1978), modified and aff'd, 633 F.2d 643 (2d Cir.1980). Modification was sought on the ground that the November 23, 1979, order exceeds the court's remedial powers as interpreted by the Supreme Court in Fire-fighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). However, the government concedes that modification of the decree would require us to overrule our recent decision in EEOC v. Local 638 ... Local 28 of Sheet Metal Workers, 753 F.2d 1172 (2d Cir.1985), cert. granted sub nom. Local 28 of Sheet Metal Workers v. EEOC, --- U.S.----, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985), in which we decided that the limitations dealt with by the Supreme Court in Stotts do not restrict a court's power to grant the type of relief granted here. In the alternative, the government asks that this appeal be held in abatement pending the Supreme Court's decision in EEOC v. Local 638. Since we believe that EEOC v. Local 638 controls this case and that no useful purpose would be served by delaying our decision, we affirm.
 
 
 2
 In the present case, unlike Stotts, the district court after a lengthy trial made detailed findings in support of its conclusion that the City of Buffalo had engaged in a pattern and practice of discrimination against blacks, Spanish-surnamed Americans and women in hiring and in the terms and conditions of employment in the City's police and fire departments. United States v. City of Buffalo, supra, 457 F.Supp. at 621-38. The hiring inequities were serious and were clearly the product of discrimination. The harmful effects were equally serious and broad in scope. The victims were not simply a small number of identifiable persons who might be made whole by a narrowly-drawn "make-whole" decree but a large group, most of whom could not be individually identified. The court found, for example that while 20.4% of the city's population and 17.5% of its labor force were black, only 2.7% of the uniformed policemen and 1.2% of the firemen were black, id. at 621. The court ruled that the various hiring tests that had this disproportionate impact were not demonstrably related to job performance, and therefore ran afoul of Title VII, id. at 622-29. Even those blacks who were hired were the victims of discrimination. Black policemen were harassed, humiliated, and threatened, and the department failed to respond effectively to their complaints. Id. at 632-35. The court also found that the police department had discriminated against blacks in terms and conditions of employment. Id. at 635-38.
 
 
 3
 Thus it was clear that unless prospective relief were available the wrong could not, because of the inability to identify each of the victims, be remedied by "make-whole" relief. To remedy these violations, Judge Curtin entered a Final Decree and Order on November 23, 1979, requiring the City to "adopt and seek to achieve the interim goal of making 50% of all entry level and/or police officer appointments from among qualified black and [Spanish-surnamed American] applicants." The decree also required the adoption of an interim hiring goal for women of 25% and contained a number of other requirements designed to ensure the establishment of fair hiring practices in the future and the creation of non-discriminatory conditions of employment. On appeal, we affirmed this interim relief, United States v. City of Buffalo, 633 F.2d 643 (2d Cir.1980), but modified the decree by vacating provisions specifying "long-term" goals regarding the minority composition of the police and fire departments. In affirming the interim goals, we emphasized that "the duration of such hiring quotas should be no longer than necessary." 633 F.2d at 647.
 
 
 4
 In Local 638, supra, we upheld the interim use of racial preferences to remedy violations of Title VII based on findings of egregious past general discrimination and as a remedy for civil contempt stemming from violations of such a remedial order. We concluded that such "race-conscious" relief was available under Sec. 706(g) of Title VII and consonant with the Supreme Court's holding in Stotts because (1) the remedy did not conflict with a bona fide seniority plan protected by Sec. 703(h) of Title VII, (2) the remedy provided prospective rather than "make-whole" relief, and (3) the remedy was based on the district court's finding of intentional discrimination rather than on a consent decree. Local 638, supra, at 1186. For the same reasons we believe that the relief granted by the district court in this case was fully within its powers.
 
 
 5
 It is undisputed that the decree in this case does not conflict with a seniority plan protected by Sec. 703(h) or stem from a negotiated settlement rather than a judicial finding that Title VII was violated. To that extent, therefore, the issues raised in Stotts are not present here. The crucial question is whether Stotts held that "make-whole" relief is the only type of remedy available for a violation of Title VII. "Make-whole" relief, which confers benefits on individuals or groups in order to compensate them for past wrongs they have suffered, has been distinguished from prospective relief which alters the future practices and policies of violators in order to eradicate discrimination and its lingering effects. See Franks v. Bowman Transport Co., 424 U.S. 747, 768 n. 28, 96 S.Ct. 1251, 1266 n. 28, 47 L.Ed.2d 444 (1976). We do not believe that Stotts did away with this distinction. In our view the Supreme Court limited its holding to a much narrower issue than that encountered here, i.e., whether a court may order "make-whole" relief that overrides a valid existing seniority system. The Stotts order, which prohibited the lay-off of any black employee, was designed solely to protect the jobs of 15 black firefighters who otherwise would have been laid off (along with some white firefighters) because of lack of seniority under the valid system in effect. The inevitable result of the order would have been to cause 15 additional white firefighters to lose their jobs unless the employer altered its plans. Stotts, supra, 104 S.Ct. at 2582. The Court noted that the order, in effect, provided make-whole relief to individuals not found to be victims of discrimination and therefore violated the policy behind Sec. 706(g). Id. at 2588-90.
 
 
 6
 The discriminatory practices and relief ordered in the present case are different in nature from those faced in Stotts. Here the court did not award "make-whole" relief on behalf of identifiable victims but prospective relief based on findings, after a trial, that Buffalo's hiring methods were discriminatory. Such broad discriminatory conduct demands equally broad prospective equitable relief. Otherwise the wrong will not be remedied. "Make-whole" relief, absent ability to identify the individual victims, would be pointless and ineffective. The source of the court's power to issue broader prospective relief is found in its powers as a court of equity and in the broad language of Sec. 706(g), which authorizes the court to "enjoin the respondent from engaging in such unlawful practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees ... or any other equitable relief as the court deemed appropriate...." (Emphasis added).
 
 
 7
 In exercising the foregoing powers in the present case we sought to confine the relief to the needs of the situation, stressing that once valid selection criteria were established, the continuation of hiring goals would raise separate questions not addressed to the initial validity of the order. United States v. City of Buffalo, 633 F.2d at 648. The decree was also designed to eradicate the past effects of the discrimination. Id. As such, it altered hiring criteria generally rather than benefiting or harming particular individuals. Unlike the decree in Stotts, the order did not compel the City to hire or retain any particular applicants or employees and did not require the hiring or retention of individuals who otherwise would have been rejected or discharged on non-discriminatory grounds. As we indicated in our previous opinion, the interim relief ordered by the district court was therefore appropriate. The Supreme Court's decision in Stotts does not call into question the propriety of the relief at issue here.
 
 
 8
 The contentions of the City and intervenor Blake that the decree here should be modified in light of the events that have occurred since the November 1979 order, including the development of new selection tests by the City, were not presented to the district court and are not properly before this court. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975) (decisions concerning Title VII remedies are left, in the first instance, to the district courts).
 
 
 9
 The order of the district court is affirmed.